IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **KATHLEEN BERBERICH** <br> c/o Santen & Hughes <br> 600 Vine Street, Suite 2700 <br> Cincinnati, OH 45202 <br><br> **PLAINTIFF,** <br> vs. <br><br> **CITY OF CINCINNATI, and** <br><br> c/o City of Cincinnati Law Department <br> 801 Plum Street <br> Cincinnati, Ohio 45202 <br><br> and <br><br> **P.O. J. O'BRIEN** <br> c/o City of Cincinnati Police Department <br> 310 Ezzard Charles Drive <br> Cincinnati, Ohio 45202 <br><br> and <br><br> **LT. HENNIE (L45)** <br> c/o City of Cincinnati Police Department <br> 310 Ezzard Charles Drive <br> Cincinnati, Ohio 45202 <br><br> *INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AS EMPLOYEES OF THE CITY OF CINCINNATI, OHIO* <br><br> **DEFENDANTS.** | Case No.: <br><br> Judge _____ <br><br> **COMPLAINT FOR MONETARY DAMAGES AND INJUNCTIVE RELIEF WITH JURY DEMAND** |

1

Comes now the Plaintiff, Kathleen Berberich, ("Berberich") and for her Complaint states as follows:

## I. NATURE OF THE ACTION

This is an action arising under 42 U.S.C. § 1983, the Constitution of the United States, and other state and federal law alleging that the City of Cincinnati ("City"), by and through its Police Officers and Administrators, and Cincinnati police officers ("Officers") captioned above, acting under color of state law and in the course of their official duties, violated Plaintiff Kathleen Berberich's rights under the Fourth and Fourteenth Amendments to be free from excessive force and unreasonable seizure of her person, and to due process of law. More specifically, Berberich alleges that Officers, in part through use of excessive force, improperly executed a seizure of Berberich's person and that the City and its police department failed to effectively train, supervise, monitor and discipline its police officers to prevent the use of excessive force and unlawful seizures by its officers. Berberich further alleges that the City of Cincinnati through its police department through official policies, procedures, directives from responsible officials, customs and usage did carry out a massive action of brute force and oppression which violated Berberich's rights under the First Amendment to freedom of expression, assembly, petition of the government, and due process of law, and the result of these actions was grievous injury to Berberich's person.

## II. JURISDICTION AND VENUE

1. Berberich seeks monetary damages against the Defendants on the grounds that the use of force and seizure of her person violated Berberich's rights under the United States Constitution. Accordingly, Berberich invokes this Court's federal question jurisdiction conferred by 28 U.S.C. § 1331. Additionally, because Berberich seeks this relief pursuant to 42 U.S.C. § 1983, this Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4).

2. Venue is proper in the Southern District of Ohio, Western Division under 28 U.S.C. § 1391 since the incidents giving rise to the causes of action alleged herein occurred within this District and Division.

### III. PARTIES

3. Berberich is a natural person who resides in this judicial district.

4. Defendant City of Cincinnati ("City") is a political subdivision existing pursuant to the laws of the State of Ohio, and having the capacity and authority to sue and be sued in its own name. The City at all times relevant to this Complaint employed, controlled, or had the right to control the Officers who committed the acts and conduct complained of herein while acting in the course and scope of their employment for the City.

5. Defenants O'Brien and Hennie were at all relevant times officers with the Cincinnati Police Department acting under color of law. They are sued individually and in their official capacity as employees of the City of Cincinnati.

6. Defendant **Hamilton County** ("County") is an Ohio political subdivision, duly organized under the laws of the State of Ohio, residing in the Southern District of Ohio. The Hamilton County Sheriff's Office ("HCSO") and Hamilton County Justice Center ("HCJC") are agencies of Defendant County, and all actions of the HCSD and HCJC are the legal responsibility of the County.

### IV. COLOR OF LAW

7. Berberich is informed, believes, and alleges that, at all times relevant to this action, City and Officers acted in their official and governmental capacities and under color of state and local law, and all of the acts alleged herein were carried within the course and scope of their official duties and in its capacity as a municipal corporation.

V.     FACTS

8. On May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed Black man. Several months earlier, Louisville police had shot and killed Breonna Taylor, an unarmed Black woman, in her bed as she slept. Just a few weeks before the murder of Floyd, video emerged of the point-blank shooting of Ahmaud Arbery, who had been killed by three white men who, at the time, had not been charged with a crime despite video evidence of the murder.

9. In the wake of Floyd's death, people across the country and around the world began demonstrating to demand justice and change.

10. Protestors also gathered together in Cincinnati in solidarity with this global movement.

11. In response to the protests, on May 30, 2020, then-Mayor John Cranley issued an "Emergency Order" purporting to impose a curfew and restricting political protests in the City. ("Emergency Order," attached as Exhibit 1).

12. In the Emergency Order, Cranley claimed that there was an "emergency declaration currently existing in the City of Cincinnati, which declaration pursuant to Article III of the City Charter was approved by the City Council…" However, the First Emergency Order did not annex a copy of the purported emergency declaration, nor did it contain a copy of an ordinance or other evidence of approval by Council.

13. The Emergency Order contained Cranley's order for "implementation of a curfew from 10 p.m. to 6 a.m. in designated neighborhoods of the City of Cincinnati" ("Curfew"). The First Emergency Order further provided that:

Individuals are prohibited from appearing in the public spaces of the City of Cincinnati neighborhoods of Over-the-Rhine, the Central Business District/Downton, the Banks, and the West End during the period of the curfew. This Order is inapplicable to the City of Cincinnati officials, members of the public safety forces, emergency personnel, health care professionals, essential workers, people experiencing homelessness and local government officials engaged in their lawful duties.

14. The First Emergency Order was unconstitutionally vague and left people in Cincinnati to guess whether the Curfew applied to them.

15. The Emergency Order that established the Curfew explicitly named several classes of persons to whom the Curfew was not applicable, including "health care professionals, essential workers, and people experiencing homelessness," among others. However, the Emergency Order did not define any of these terms.

16. Relatedly, at the time of these events, during the early days of the COVID-19 pandemic, the Ohio Department of Health had issued orders which did define "Essential Activities," "Essential Travel," "Essential Infrastructure," and "Essential Businesses and Operations," which described a broad range of persons and activities including everything from grocery stores, religious gatherings, gas stations, and "First Amendment protected speech."

17. The Emergency Order likewise did not define what it meant to "appear" or what areas constituted "public spaces."

18. In a press conference on the morning of Saturday, May 30, 2020, former Mayor Cranley and former Chief Isaac announced this Order to the public.

19. After the issuance of this Emergency Order, more than 1,000 people in and around Cincinnati resumed protesting on Saturday, May 30, 2020 during daytime hours, prior to the 10 p.m. implementation of the Curfew.

20. Plaintiff Kathleen Berberich arrived at a demonstration outside CPD District 1 headquarters shortly after 9:00 p.m. on Saturday, May 30, 2020.

21. There was a large group of demonstrators that had gathered at District 1, but Cincinnati police caused the crowd to disperse by indiscriminately firing tear gas cannisters that wafted clouds of noxious irritant fumes over them.

22. At approximately 9:45 p.m., Berberich was walking away from District 1 across Central Parkway when she was accosted by Cincinnati police, who ordered her to get out of the street. Although most of the protesters had by then left the scene after the deployment of tear gas, Cincinnati police singled Berberich out among the people who were then walking down or across the street.

23. Berberich promptly complied, and walked directly to get out of the street.

24. Cincinnati police seized her nonetheless, and informed her that she was charged with being in the street unlawfully. She was handcuffed and forcibly seated on the concrete. It was still at least 15 minutes before 10:00 p.m. when the unconstitutional Curfew would theoretically go into effect.

25. Berberich was placed by Cincinnati police on the ground in an area where Pepper balls had recently exploded, and the ground was coated with a film of the noxious irritant Pepper dust.

26. Berberich was later transported and remanded into the custody of the Hamilton County Sheriff. However, when she was placed for processing, she was charged with violating the Curfew, not jaywalking, as she had originally been told.

27. Because Cincinnati police had forced her to sit on ground covered with Pepper dust, her clothes became stained with the noxious chemicals.

28. As the night wore on, she inadvertently touched the Pepper dust. She then inadvertently touched her face, causing sensitive tissues to become exposed to the toxic Pepper dust.

29. Her eyes and mouth became severely irritated as a result of the Pepper dust.

30. Berberich informed the staff at the Jail that she had been exposed to Pepper dust, and was experiencing distress. However the corrections officers refused to allow her access to water to wash out her eyes and mouth. Instead, they gave her a single dry napkin to address the chemical exposure that she had suffered.

31. Berberich informed the staff at the Hamilton County jail of her medical need for medication for which she had been prescribed for daily use.

32. The staff at the Jail informed her that she could only obtain any necessary medication by speaking with the nurse assigned to the Jail.

33. Despite her repeated entreaties, Berberich was never permitted to see a nurse while she was in custody. She was never provided with her medication.

34. Cincinnati police transported Berberich in a group transport vehicle along with several other prisoners and transferred Berberich into the custody of the Hamilton County Sheriff, where Berberich spent the night in jail.

35. Defendant CPD officer J. O'Brien, "processing officer," completed the complaint against Berberich alleging "Failure to Disburse" [sic] despite having no probable cause and no personal knowledge of the events allegedly giving rise to the complaint.

36. The name of Defendant Lt. Hennie (L45)(18421) likewise appeared on the complaint, apparently written by Defendant O'Brien.

37. Neither Defendant O'Brien nor Defendant Hennie had probable cause to charge Berberich with any crime, but both CPD officers nonetheless instigated, influenced, and/or participated in the decision to charge Berberich with "Failure to Disburse" [sic].

38. A friend posted bond for Berberich, and Berberich was released the next day, on May 31, 2020.

39. Berberich was forced to suffer the burden of facing ongoing prosecution over the next several months, which had detrimental affects on Berberich's personal and professional life.

40. On July 7, 2020, Berberich's counsel filed a Motion to Dismiss the pending criminal charges as part of the common defense.

41. The case was assigned to Judge Alan Triggs, who never issued a decision on the Motion.

42. On April 8, 2021, the State conceded that it could not satisfy its discovery obligations under Ohio Crim. R. 16.

43. On June 4, 2021, upon the State's request, the court dismissed charges against Berberich, concluding the prosecution.

## COUNT I - 42 U.S.C § 1983
### (*Excessive Force*)

44. Berberich hereby incorporates by reference the foregoing allegations as if the same were fully set forth herein.

45. Defendants City and Officers, under color of state law, deprived Berberich of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the U.S. Constitution, including but not limited to the right to be free from unreasonable seizure, excessive force, and violations of substantive due process. The actions of Defendants reflect an unreasonable and arbitrary abuse of government power and infliction of excessive force, which shocks the

8

conscience of the community.

46. By gratuitously subjecting Berberich to physical contact with irritant pepper dust, violated Berberich's right to be free of excessive force.

47. The injuries suffered by Berberich were proximately caused by the actions of Defendants.

48. Defendant City of Cincinnati is vicariously liable for the actions of its Officers to the extent that the same were carried out in the course of their duties.

## COUNT II - 42 U.S.C § 1983
### (*Unreasonable seizure*)

49. Berberich hereby incorporates by reference the foregoing allegations as if the same were fully set forth herein.

50. Defendants, under color of state law, deprived Berberich of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the U.S. Constitution, including but not limited to the right to be free from unreasonable seizures of her person, and violations of substantive due process. The actions of Defendants reflect an unreasonable and arbitrary abuse of government power and seizure in violation of Berberich's constitutional rights, which shocks the conscience of the community.

51. On May 30, 2020, by bodily arresting and imprisoning Berberich, Defendants violated Berberich's right to be free from unreasonable seizure.

52. Defendants acted under color of law.

53. The injuries suffered by Berberich were proximately caused by the actions of Defendants.

54. Defendant City of Cincinnati is vicariously liable for the actions of its Officers to the extent that the same were carried out in the course of their duties.

## COUNT III
### (*Failure to train, supervise, monitor, and/or discipline*)

55. Berberich hereby incorporates by reference the foregoing allegations as if the same were fully set forth herein.

56. The need for adequate training, supervision, monitoring, and discipline of officers in basic Constitutional principles and rights of citizens is obvious in light of the scope of duties assigned to City police officers. Inadequacy of training, supervision, monitoring, and discipline with respect to Constitutional rights is likely to result in violations of the rights of its citizens, such that the failure of the City to provide such training, supervision, monitoring, and discipline demonstrates the City's deliberate indifference to this need.

57. Subjects on which the needs for training, supervision, monitoring, and discipline are obvious include: the citizen's right to be free from unreasonable seizures of the person; the citizen's right to be free from excessive force employed by police officers.

58. Defendant City has a history of failing to adequately train, supervise, monitor, and discipline its officers, which has resulted in repeated violations of the Constitutional rights of citizens, including Berberich.

59. To the extent that the City does have formal policies which purport to provide basic protection of the Constitutional rights of its citizens, the City has engaged in a practice of acquiescence to violations of those policies by failing to adequately discipline its officers for violations, failing to supervise, train and monitor to prevent such violations.

60. The City's failure to adequately train, supervise, monitor, and discipline officers for violations of constitutional rights is widespread, longstanding, and well-settled, such that it constitutes a custom and usage with the effective force of law.

61. The City's failure to adequately train and supervise its officers proximately

caused the violation of Berberich's right to be free from unlawful seizures of her person.

62. The City's failure to adequately train and supervise its officers proximately caused the violation of Berberich's right to be free from excessive force.

63. Defendant City of Cincinnati is liable for the actions of its Officers to the extent that the same were carried out in the course of their duties.

## COUNT IV – 42 U.S.C § 1983
### (*Wrongful Arrest*)

64. Berberich hereby incorporates by reference the foregoing allegations as if the same were fully set forth herein.

65. In the manner described more fully above, Defendants and their employees/agents caused Berberich to be unreasonably seized, detained, imprisoned, and deprived of liberty without probable cause to believe that she had committed a crime, in violation of their rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

66. In the manner described more fully above, Defendants and their employees/agents violated Berberich's rights under the Fourth and Fourteenth Amendments by arresting her.

67. Further, during the constitutional violations described in this Count, one or more of the Defendants stood by without intervening to prevent the violation of Berberich's constitutional rights, even though they had the opportunity to do so.

68. The Defendants and/or their employees/agents are liable because the violation of Berberich's rights as described in this Count was caused by the policies, practices, customs, and/or actions of policymakers for these Defendants.

69. The misconduct described in this Count was undertaken pursuant to the

policies, practices, and customs of the Defendant City. The policies, practices, and customs of the Defendant City were the moving force behind the misconduct described in this Count and the violation of Berberich's rights.

70. The Defendant City is liable because the violation of Berberich's rights as described in this Count was caused by the policies, practices, or customs of the relevant policymakers for the City. In addition, the misconduct described in this Count was undertaken pursuant to the policy and practices of the Defendant City and the Cincinnati Police Department ("CPD") in that the violation of Berberich's rights described in this Count was committed by the relevant final policymaker for the City, or the persons to whom final policymaking authority had been delegated.

71. In the manner described more fully above, the need for policies, training, and supervision of officers on how to handle arrests as described in this Count was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the Defendant City can reasonably be said to have been deliberately indifferent to the need.

72. The widespread practices were so well settled as to constitute de facto policy in the City and CPD, and they were allowed to exist because municipal policymakers with authority over the practices exhibited deliberate indifference to the problems, effectively ratifying them.

73. As a direct and proximate result of Defendants' actions, Berberich's constitutional rights were violated, entitling her to relief.

74. Defendants are jointly and severally liable for this conduct.

## COUNT V– 42 U.S.C § 1983
### (*Retaliation for Exercise of First Amendment Rights*)

75. Berberich hereby incorporates by reference the foregoing allegations as if

the same were fully set forth herein.

76. Berberich was engaging in, or attempting to engage in activities protected by the First Amendment to the United States Constitution at the time of her arrest.

77. The protests and demonstrations that took place between May 29, 2020 and June 8, 2020 had as their focus an opposition to police brutality against black people and people of color, and sought reform in policing and government.

78. In the drafting, enactment, execution and enforcement of an unlawful curfew, the Defendants acted with a retaliatory motive against Berberich on account of Berberich's act of protesting against and petitioning the government for change.

79. During the enforcement of the unlawful curfew, CPD officers routinely identified and arrested persons perceived to be participating in or leading protests, even as they gave warnings to and declined to take action against other persons who were physically present at the same times and places.

80. During the enforcement of the unlawful curfew, CPD officers regularly deployed less lethal weapons against persons perceived to be participating in or leading peaceful and lawful protests, even as they took no action against other persons who were physically present at the same times and places.

81. In carrying out the enforcement of the unlawful curfew and the hundreds of arrests that were made for alleged violation of the curfew, engaged in selective enforcement against Berberich as retaliation against Berberich on account of Berberich's act of protesting against and petitioning the government for change.

82. In carrying out the enforcement of the unlawful Curfew and the hundreds of arrests that were made for alleged violation of the Defendants used in excessive force against

Berberich as retaliation against Berberich on account of Berberich's act of protesting against and petitioning the government for change.

83. In carrying out the enforcement of the unlawful Curfew and the hundreds of arrests that were made for alleged violation of the curfew, Defendants imposed unconstitutional conditions of confinement, in violation of Berberich's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and subjecting her to a substantial risk of serious harm, and causing the injuries alleged in this complaint.

84. Defendants retaliated against Berberich solely because Berberich had chosen to exercise her First Amendment rights in support of a specific cause, against police brutality.

85. Berberich's act of engaging in protected First Amendment activities was the cause of Defendants' retaliation.

## COUNT VI
### (*Monell v. Dept of Soc. Svcs. of New York*, *436 U.S. 658 (1978)*)

86. Berberich hereby incorporates by reference the foregoing allegations as if the same were fully set forth herein.

87. The Defendant City has implemented or executed policies or adopted widespread practices as custom with the force of law, all of which govern the conduct of its police officers.

88. Defendant City has adopted such policies, practices or customs in connection with each of the following police activities: use of force; crowd control.

89. The execution of City's policies and customs proximately caused the violation of Berberich' right to be free from excessive force.

90. The execution of City's policies and customs proximately caused the violation of Berberich's right to be free from unreasonable seizures of his person.

91. During all times relevant to this action, the City of Cincinnati enacted and pursued policies and procedures which related to the training, supervision, and retention of Defendant Officers. These policies and procedures were enacted and pursued with full knowledge that the Constitutional violations pleaded herein were a foreseeable result. The City of Cincinnati further ratified the actions of Defendant Officers. Defendant City of Cincinnati acted with deliberate indifference, with wanton and willful disregard, recklessly, and intentionally.

92. The policies and procedures of the City of Cincinnati were the proximate cause of the deprivation of Berberich's constitutional rights.

93. The City's training and execution in and of the policies for use of force and crowd control is responsible for violation of the Constitutional rights of Berberich, among others.

94. Defendant City of Cincinnati is liable for the actions of its Officers to the extent that the same were carried out in the course of their duties.

**PRAYER FOR RELIEF**

Wherefore, Kathleen Berberich prays that the Court grant the following relief:

A. Compensatory damages in excess of $25,000.00 arising from Defendants actions and the denial of Berberich's rights, including without limitation the costs, expenses, and lost income or opportunities incurred in mounting her defense to the false charges brought against him, as well as for pain, suffering, and other losses;

B. Injunctive relief restraining the City of Cincinnati from subjecting its citizens to excessive force and/or unreasonable seizures of their person;

15

C. Punitive damages as may be authorized by law;

D. For an award of his reasonable attorney's fees and costs pursuant to the Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988;

E. For an award of the taxable costs of court; and

F. For such other and further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ J. Robert Linneman*
J. Robert Linneman (0073846)
H. Louis Sirkin (0024573)
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, OH 45202
(513) 721-4450
jrl@santenhughes.com
*Attorney for Plaintiff, Kathleen Berberich*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*/s/ J. Robert Linneman*
J. Robert Linneman

691831_1

16